IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**CASE NO.: 1:17-cv-1005**

SUZANNE KILPATRICK, individually and
on behalf of all others similarly situated,
Plaintiff

v.

LTD MERCHANT SERVICES, INC.,

Defendants
_____/

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

SUZANNE KILPATRICK ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant LTD MERCHANT SERVICES, INC. ("Defendant") to stop Defendant's practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

**INTRODUCTION**

1. Defendant LTD Merchant Services, Inc. is a commercial payment systems company. LTD Merchant Services, Inc. maintains its head offices in Miami, Florida and is registered in Florida. In an effort to solicit potential customers, Defendant began making telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant purchases "leads" containing consumer's contact information and creates an electronic database from which

Defendant make automated calls.

2. Defendant conducted (and continues to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3. The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

4. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

5. Plaintiff brings this class action against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

## PARTIES

6. Plaintiff SUZANNE KILPATRICK is a natural person and citizen of Austin, Texas.

7. Defendant LTD MERCHANT SERVICES, INC. is a corporation organized under the laws of the State of Florida. Defendant maintains a head office in Miami Florida. Defendant may be served with process by serving its CEO and registered agent, Chapman Ducote, 675 NW 97th Street, Miami, Florida 33150.

8. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

10. The Court has personal jurisdiction over Defendant because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

12. Defendant is subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

15. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

16. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice,

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

17. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

---

and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

18. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

19. Defendant LTD Merchant Services, Inc. is a commercial payment systems company. In an effort to solicit potential customers, Defendant began making telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant purchased "leads" containing consumer's contact information and creates an electronic database from which Defendant makes automated calls.

20. In Defendant's overzealous attempt to market its services, they placed (and continue to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Worse yet, Defendant placed (and continues to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

21. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients, and knowingly continue to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## STANDING

22. Plaintiff has standing to bring this suit on behalf of herself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be

redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**A.     INJURY IN FACT**

23.     Plaintiff's injury must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution. *(Id.)*

24.     For an injury to be concrete it must be a de facto injury, meaning it actually exists. In the present case, Plaintiff took the affirmative step of enrolling herself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to her telephone.  Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff.  *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  All three of these injuries are present in this case.

25.     Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

26.     For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7.  In the instant case, Defendant placed calls to Plaintiff's phone, and left messages on Plaintiff's phone.  It was Plaintiff's personal privacy and

peace that Defendant invaded by placing the calls to her phone. Furthermore, Plaintiff is the person who pays for the phone, and is the regular carrier and user of the phone. All of these injuries are particular to Plaintiff.

### B.   TRACEABLE TO THE CONDUCT OF DEFENDANT

27. Plaintiff must allege at the pleading stage of the case facts to show that her injury is traceable to the conduct of Defendant. In this case, Plaintiff satisfies this requirement by alleging that Defendant, and/or agent of Defendant on behalf of Defendant, placed illegal calls to Plaintiff's phone.

### C.   INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION

28. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

29. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016), Plaintiff has standing to sue Defendant on the stated claims.

## FACTS SPECIFIC TO PLAINTIFF SUZANNE KILPATRICK

30. Over two years ago, on or about July 10, 2015, Plaintiff registered her cellular phone number ending in 9305 with the National Do Not Call Registry.

31. Beginning in 2016, Plaintiff began receiving calls on her cellular telephone from the phone number (956) 391-2211.

32. Plaintiff received all calls described above on her cellular telephone assigned a number ending in 9305.

33. Defendant's representative asked for Plaintiff by name and began a sales pitch.

34. Defendant tried to sell Plaintiff a credit card payment machine.

35. Plaintiff was not interested in Defendant's offerings and did not answer Defendant's calls. Nonetheless, Defendant left messages offering deals for a credit card machine.

36. At the time of the calls, Plaintiff did not have a business relationship with Defendant.

37. Plaintiff was annoyed by the calls and wanted Defendant to stop calling, yet Defendant continued to call.

38. It was obvious to Plaintiff that Defendant was engaged in a marketing campaign wherein Defendant contacted a large number of consumers.

39. Plaintiff understood the purpose of Defendant's calls was to solicit business from Plaintiff.

40. The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

41. Plaintiff is the regular carrier and exclusive user of the home telephone assigned the number ending in 9305.

42. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

43. Plaintiff did not provide Defendant with prior express consent to receive calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

44. All calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1).

45. Plaintiff has reason to believe Defendant called, and continues to call, thousands of telephone customers listed on the DNC to market their products and services.

46. Plaintiff's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensate all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

47. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

48. On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**D.    CLASS ALLEGATIONS**

49. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the following class defined as follows (the "Class"):

> **"DNC[2] Class":** All individuals in the United States who: (1) received more

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.

50. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

51. This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

52. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

53. Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC.

**E.   NUMEROSITY**

54. The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

55. On information and belief, Defendant made telephone calls to thousands of

consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

### F.   COMMONALITY AND PREDOMINANCE

56. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

57. Common questions for the Class include, but are not necessarily limited to the following:

>   (a)   Whether Defendant's conduct violated the TCPA;
>
>   (b)   Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;
>
>   (c)   Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;
>
>   (d)   Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;
>
>   (e)   Whether Defendant systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a phone service; and
>
>   (f)   Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

### G.   TYPICALITY

58. Plaintiff's claims are typical of the claims of the other members of the Class.

59. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

## H.  ADEQUATE REPRESENTATION

60. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

61. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

## I.  POLICIES GENERALLY APPLICABLE TO THE CLASS

62. This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

63. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

## J.  SUPERIORITY

64. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

65. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

66. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

67. Even if members of the Class could sustain such individual litigation, it would still

not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

68. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227
### ("DNC Claim" On behalf of Plaintiff and the Class)

69. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

70. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

71. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

72. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No.

02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

73.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

74. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

75. Defendant made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendant do not have a record of consent to place telemarketing calls to them.

76. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

77. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein,

Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

78. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

79. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

80. Plaintiff is entitled to recover reasonable attorney fees and requests the attorneys' fees be awarded.

## JURY DEMAND

81. Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing her counsel, HUGHES ELLZEY, LLP as lead Class Counsel;

(b) An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

(c) An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C

   § 227(b)(3)(B);

(d)  An injunction requiring Defendant and Defendant's agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(e)  Pre-judgment and post-judgment interest on monetary relief;

(f)  An award of reasonable attorneys' fees and court costs; and

(g)  All other and further relief as the Court deems necessary, just, and proper.

Dated: October 20, 2017.

                Respectfully Submitted,

                /s/ Jarrett Ellzey
                Jarrett L. Ellzey
                Texas Bar No. 24040864
                W. Craft Hughes
                Texas Bar No. 24046123
                HUGHES ELLZEY, LLP
                2700 Post Oak Blvd., Ste. 1120
                Galleria Tower I
                Houston, TX 77056
                Phone: (713) 554-2377
                Fax: (888) 995-3335
                E-Mail: jarrett@hughesellzey.com
                     craft@hughesellzey.com

                **ATTORNEYS FOR PLAINTIFF**
                **AND THE PROPOSED CLASS**